# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT GREEN, | ) | |
| | ) | |
| Plaintiff | ) | Case No: 12-CV-1162 |
| | ) | |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| | ) | |
| AFT/IFT LOCAL 604, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Robert Green ("Green") sues Defendant AFT/IFT Local 604 (the "Union") for race discrimination, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Before the Court is the Union's motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

Green began working as a physical education teacher with the Aurora East School District #131 in August of 1980. He obtained a tenured teaching position approximately three years later in June of 1983. At all relevant times, Green was a member of the Union. On April 5, 2010, Green was terminated for cause pursuant to the Teacher Tenure Act ("Tenure Act"), 105 Ill. Comp. Stat. 5/24-12. Green's termination was based, in part, on two prior notices to remedy which he received in 2000 and 2006.

Green alleges that he filed a grievance with the Union related to the 2000 and 2006 notices to remedy on March 1, 2010, but that the Union rejected or failed to process it. However,

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

Green provides no evidence to support this contention. To the contrary, Green's own evidence shows that the grievance was signed by the Union President. Green's mere speculation that the Union ignored his March 1, 2010 grievance is conclusory and unsupported by admissible evidence and is therefore rejected. See Montgomery v. Am. Airlines, Inc., 626 F.3d 383, 389 (7th Cir. 2010) ("[M]ere conclusory allegations do not constitute evidence."). In any event, nothing on the face of the grievance suggests that it is related to Green's termination and Tenure Act proceedings, which occurred over a month later.

After his termination, Green asked the Union to represent him in his Tenure Act case against the Illinois State Board of Education (ISBE) where he was contesting his dismissal. Gilbert Feldman ("Feldman"), counsel for the Union in the instant matter, had prior dealings with Green leading up to the filing of his complaint before this Court. On April 12, 2010, Feldman wrote a response to Green, wherein he explained that neither he, nor the Union, would be able to represent Green in his Tenure Act case. Specifically, Feldman stated:

> The Union and its legal counsel each have an adversarial relationship with you because you have repeatedly instituted litigation against the Union and we have represented the Union in these cases . . . . This decision would be more complicated if the issue arose in the context of collective bargaining negotiations or the contract grievance procedure . . . because the Union is the legal owner of such proceedings and owes you a duty of fair representation with respect to them . . . . However, you and not the Union own your claim under the Tenure Act, conflict of interest rules are applicable and the Union has no duty of fair representation with respect to your claim.

Def.'s Mot. for Summ. J. Ex. A. On April 25, 2010, Green wrote to the Union, asking that it reconsider its decision to decline representation or, in the alternative, to provide independent legal counsel or money to hire independent counsel. Feldman, writing on behalf of the Union, once again responded to Green and reminded him that the Union's duty of fair representation "does not extend to a termination under the Teacher Tenure Act. Therefore, the requests in your

2

letter are outside of the scope of the duty and are rejected." Id. at Ex. D. Ultimately, Green secured outside counsel for his Tenure Act case, which resulted in his reinstatement.

On September 21, 2010, Green filed unfair labor practice charges against the Union with the Illinois Educational Labor Relations Board (IELRB) alleging "that the Union violated Section 14(b)(1) of the Act by refusing to represent him in his proceeding before the [ISBE] under the Teacher Tenure Act." Id. at Ex. E. Shortly thereafter, on October 7, 2010, Green filed an Equal Employment Opportunity Commission (EEOC) Charge of Discrimination, alleging that the Union's failure to represent him in his Tenure Act proceedings violated Title VII.

On December 15, 2011, the IELRB Executive Director Hearing Officer issued a recommendation rejecting Green's claims because his Tenure Act proceeding did not arise out of the collective bargaining agreement ("CBA"), and therefore the Union had no duty to represent him. The IELRB affirmed the recommendation denying Green's claims on April 11, 2012. On February 17, 2012, Green initiated the instant action pursuant to Title VII. The Union's motion for summary judgment is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). The Court does not "judge the

credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

"Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)). "Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

**B. Title VII Claims Against a Union**

As a threshold matter, in order to establish a Title VII claim against a union, a member must show each of the following by a preponderance of the evidence: (1) that the union "violated the collective bargaining agreement between the union and [the employer]"; (2) that the union "breached its own duty of fair representation by letting the breach go unrepaired"; and (3) some evidence that indicates that discriminatory animus motivated the union. Greenslade v. Chi. Sun-Times, Inc., 112 F.3d 853, 866-67 (7th Cir. 1997) (citations omitted). The Court notes that Green—in one sentence, containing a mere nine words, and citing generally to his entire statement of additional facts—contends that he has met his prima facie burden under Greenslade. See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 6 ("Green has shown this by and through his Declaration."). The Union argues that Green fails to meet his burden because, *inter*

4

*alia*, his dismissal under the Tenure Act does not implicate or involve the CBA, the Union has no duty of fair representation for proceedings under the Tenure Act, and Green fails to present any evidence of discriminatory animus.

### 1. Whether the Union violated the CBA

First, the Union argues that Green fails to show that it violated the CBA. The Court agrees. Green's allegations arise out of the Union's refusal to represent him in challenging his dismissal under the Tenure Act, not a breach of the CBA. The CBA does not contain any provisions covering the dismissal of tenured teachers for cause because that is governed by statute in the Tenure Act. Green attempts to implicate the CBA by arguing that he filed a grievance on March 1, 2010—based on notices to remedy that he received in 2000 and 2006 (notices that ultimately led to his dismissal)—which he claims the Union failed to file. However, as discussed above, Green fails to provide any evidence to support this belief. Green's attenuated argument is rejected; he provides no evidence from which a trier of fact could find that the Union violated the CBA.

### 2. Whether the Union breached its duty of fair representation

Next, the Union argues that Green fails to establish a breach of the duty of fair representation.

> The duty of fair representation stems from a union's status as the exclusive bargaining representative for a group of employees. The principle of exclusivity of representation therefore also defines the limits of the union's accountability; that is, only in those activities for which the union is the exclusive representative does the duty of fair representation attach.

Jones v. Ill. Educ. Labor Relations Bd., 650 N.E.2d 1092, 1099 (Ill. App. Ct. 1995) (internal quotation marks and citation omitted). In addition, "[t]he implied duty of fair representation obligates the union 'to serve the interests of all members without hostility or discrimination

toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" Nat'l Labor Relations Bd. v. IBEW, Local Union 16, 425 F.3d 1035, 1039 (7th Cir. 2005) (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). However, Section 14(b)(1) of the Illinois Educational Labor Relations Act provides that a union does not violate its duty of fair representation unless it engages in <u>intentional misconduct</u>, not merely arbitrary conduct. 115 Ill. Comp. Stat. 5/14(b)(1) (emphasis added). "For a complaining party to establish a breach of the duty of fair representation under the intentional misconduct standard, he must show substantial evidence of fraud, deceitful action, or dishonest conduct, or deliberate and severely hostile and irrational treatment." Paxton-Buckley-Loda Educ. Ass'n, IEA-NEA v. Ill. Educ. Labor Relations Bd., 710 N.E.2d 538, 544 (Ill. App. Ct. 1999) (internal quotation marks and citations omitted).

Here, the duty of fair representation did not attach to Green's Tenure Act proceedings because it took place outside of the Union's position as Green's exclusive bargaining representative. However, Green appears to proceed on the theory of an implied duty of fair representation. See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. 8 ("When we apply the [Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 64, 76 (1991)] test to the case at hand we look at (1) did the union act arbitrarily, the answer is yes; when we look at (2) did the union act discriminatorily, the answer again is yes, and the last issue of (3) did the union act in bad faith, would again be yes. The issues of arbitrary and bad faith run parallel in this case. When the court looks at all the documents and evidence in this case . . . it should determine that these allegations should move forward."). The Court notes that Green neglects to apply the applicable standard of "intentional misconduct" under Illinois law, which governs the relationship with an Illinois union, as opposed to "arbitrariness" under the federal standard. See Jones, 650 N.E.2d at

6

1102 (applying the intentional misconduct standard under Illinois law). Specifically, Green argues that the Union owed him a duty of fair representation because it allegedly represented other members—outside of his protected classes—in proceedings outside of the CBA. However, simply because the Union may have funded or provided representation to other members in matters outside of the CBA, that "would not necessarily create an obligation for it to do so in every case. Although it is conceivable that some common law right of action may accrue from a labor organization's discriminatory funding of private suits even where, as here, it has no duty to provide such funding, any such discrimination would <u>not</u> amount to a breach of the duty of fair representation." <u>Id.</u> at 1099-1100 (emphasis added). Thus, Green fails to establish that the Union breached its duty of fair representation. Because Green fails to meet his prima facie burden to establish that the Union breached the CBA or owed a duty of fair representation to him, the Court need not address whether the Union had any discriminatory animus. Accordingly, the Union is entitled to judgment as a matter of law and summary judgment is therefore proper.

## III. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of the Union on all of Green's Title VII claims.

IT IS SO ORDERED.

ENTER:

*Charles Norgle* (signature)

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 24, 2013