```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION
```

| | | |
|---|---|---|
| ROBERT GREEN, | ) | |
| | ) | No. 12 CV 1162 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| AMERICAN FEDERATION OF | ) | |
| TEACHERS / ILLINOIS | ) | |
| FEDERATION OF TEACHERS | ) | |
| LOCAL 604, | ) | |
| | ) | March 30, 2015 |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

In 2010 Aurora East School District 131 (the "School District") fired Plaintiff Robert Green from his teaching position. Green sought help from his union, Defendant American Federation of Teachers/Illinois Federation of Teachers Local 604 (the "Union"), to file a grievance against the School District on his behalf. The Union refused. Green filed this action against the Union under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000(e), *et seq*. The district judge assigned to this case entered summary judgment in favor of the Union on July 24, 2013. (R. 26.) On January 23, 2014, the Seventh Circuit reversed and vacated the summary judgment on appeal. (R. 38.) On October 23, 2014, the Union again moved for summary judgment. (R. 46.) After the parties fully briefed the motion, they jointly consented to the jurisdiction of this court on January 28, 2015. (R. 66); *see* 28 U.S.C. § 636(c). For the following reasons, the Union's motion for summary judgment is denied:

**Facts**

As an initial matter, the court notes that there are instances in the parties' Local Rule ("L.R.") 56.1 statements and responses thereto in which the parties failed to cite to supporting materials.[1] When moving for summary judgment, L.R. 56.1(a) requires movants to provide a statement containing:

> short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

L.R. 56.1(b) places a similar duty on the party opposing summary judgment. Failure to comply with L.R. 56.1 is sufficient ground for courts to strike or disregard unsupported facts. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) ("we have . . . consistently and repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1") (citing *Bordelon v. Chi. School Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000)); *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809 (7th Cir. 2005) (district court decision to strike statements of fact for noncompliance with L.R. 56.1 is only reviewable for abuse of discretion); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (applying strict compliance even to *pro se* litigants).

The most glaring problem with the Union's statements of fact is that they are composed of lengthy paragraphs containing many different proposed facts but

---

[1] The court will refer to the Union's L.R. 56.1 Statement of Material Facts as "Def.'s Facts ¶__," to Green's Statements of Additional Fact as "Pl.'s Facts ¶__," to Green's Response to Defendant's Rule 56.1 Statement of Material Facts as "Pl.'s Fact Resp. ¶__," and to the Union's L.R. 56.1(A)(3)(b) Reply as "Def.'s Fact Reply ¶__."

without any identifiable support. (See, e.g., R. 52-1, Def.'s Facts ¶¶ 3, 6, 12, 17, 19, 23, 24.) L.R. 56.1(a) requires not only citations at the conclusion of each paragraph, but "within each paragraph specific references to the affidavits, parts of the record or other supporting material." Just as often, the only citation offered by the Union is to a nearly identical paragraph in the affidavit of Gilbert Feldman, the Union's attorney, but without proper foundation. (See R. 52-1, Def.'s Facts ¶¶ 14, 15, 17-19.) Merely transposing statements from an affidavit does not make them proper if the declarant is attesting to hearsay or statements that are not admissible. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (in a motion for summary judgment, factual assertions must be competent evidence that is admissible at trial); *Bombard v. Fort Wayne Newspapers,* 92 F.3d 560, 562 (7th Cir. 1996) (same). For example, Feldman testifies in his affidavit that the Union "consistently adhered to" certain policies, (R. 52-2, Feldman Aff. ¶ 14), or that it "had a practice with respect to bargaining unit employees," (id. ¶ 19), but he fails to explain how he is qualified to testify to these facts. The Union did not provide any other testimony to support these factual assertions. In this district, unsupported factual statements are to be disregarded. *See Menasha Corp. v. News Am. Mktg. In-Store*, 238 F. Supp. 2d 1024, 1029 (N.D. Ill. 2003).

At other times, the Union offers purely legal arguments in its statements of fact, sometimes interspersed with case citations. (See R. 52-1, Def.'s Facts ¶¶ 8, 9, 26.) Legal arguments with case citations have no business in L.R. 56.1 statements. *See Servin v. GATX Logistics, Inc.,* 187 F.R.D. 561, 562 (N.D. Ill. 1999); *Porties v.*

3

*Gen. Elec. Co.*, No. 02 CV 3995, 2004 WL 1151594, at *4 (N.D. Ill. Apr. 28, 2004). As such, the court disregards the Union's legal arguments in the statements of fact for purposes of sorting through its proposed facts that are allegedly not in dispute.

The Union complicates the identification of undisputed facts further by commingling supported facts with unsupported facts within its paragraphs. Green in turn misses an opportunity to make the court's job easier in weeding out the disputed facts because many of Green's objections also fall short of the requirements of L.R. 56.1(b) for lack of "specific references to the affidavits, parts of the record, and other supporting materials relied upon." (See, e.g., R. 57, Pl.'s Fact Resp. ¶¶ 7, 20, 21, 25, 27.) Wherever Green's objections or denials of the Union's statements of facts lack specific citations to the record, the court deems the Union's facts to be admitted. *See Howard-Ahmad v. Chi. Sch. Reform Bd. of Trs.*, 161 F. Supp. 2d 857, 859 n.1 (N.D. Ill. 2001) (strictly enforcing L.R. 56.1 against unsupported responses to proposed facts); *Waugaman v. Univ. of Chi. Hosps.*, No. 00 CV 2581, 2002 WL 472278, at *3 n.6 (N.D. Ill. Mar. 28, 2002) (refusing to consider "wholesale" denials without supporting citations to the record).

A strict application of L.R. 56.1 to the statements in this case yields the following facts which are relatively straightforward, if occasionally wanting for context. Green began employment with the School District in August 1980 and he obtained tenured status three years later in June 1983. (R. 58, Pl.'s Facts ¶ 1.) However, Green's employment was not without difficulties and his relationship with the Union was also strained. Since 2003 Green has filed several other actions

4

against the Union, including a charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") and with the Illinois Department of Human Rights on September 26, 2005. (Id. ¶ 22; R. 52-1, Def.'s Facts ¶ 3.)

On April 5, 2010, the School District fired Green from his position. (Id. ¶ 2.) In response, Green sought representation from the Union to contest his termination. (R. 58, Pl.'s Facts ¶ 5.) The Union referred Green's request to its attorney, Feldman. (Id.) Feldman is also the attorney who represented the Union in several matters Green filed against the Union. (R. 52-1, Def.'s Facts ¶ 3.) On April 12, 2010, Feldman communicated the following to Green:

> I am writing in response to your request that my client, [the Union], provide you with representation in your pending dismissal case under the Teacher Tenure Act. After lengthy consideration, a determination has been made not to provide you with such representation for the following reasons.
>
> The Union and its legal counsel each have an adversarial relationship with you because you have repeatedly instituted litigation against the Union and we have represented the Union in these cases.
>
> This decision would be more complicated if the issue arose in the context of collective bargaining negotiations or the contract grievance procedure. That is because the Union is the legal owner of such proceedings and owes you a duty of fair representation with respect to them; and the law is that a Union can represent employees in these cases regardless of conflicting interests. However, you and not the Union own your claim under the Tenure Act, conflict of interest rules are applicable and the Union has no duty of fair representation with respect to your claim.

(R. 58-4 at 2.) When he made this decision to deny Greens request, Feldman explains in his affidavit that he was unaware of Green's 2005 EEOC charge of race discrimination against the Union. (R. 52-2, Feldman Aff. ¶ 25.)

5

After Feldman denied his request for representation, Green requested that the Union provide and pay for an attorney other than Feldman to represent him at his termination hearing, but the Union denied this request as well. (R. 58, Pl.'s Facts ¶ 8.) Green alleges that the Union provided representation to white and female employees in Tenure Act cases, all of whom were represented by Feldman. (Id. ¶ 21.) The Union admits that Feldman represented white teachers who had been terminated, but denies that he did so "through the union." (R. 62, Def.'s Fact Reply ¶¶ 9-10.) In support of his assertion that the Union does represent teachers in Tenure Act cases, Green points to an Illinois State Board of Education Opinion and Decision (Arb. Ref. 06.341) in a Teacher Tenure Act case that explains "the teachers in the District are represented by the District 211 Teachers Union, IFT/AFT," and lists Feldman as the attorney for the teacher. (R. 58-1, Green Decl. ¶ 6 (citing R. 58-5, Ex. D at 1, 3).) The Union disputes this proposed fact, (R. 62, Def.'s Fact Reply ¶ 12), basing its objection solely on Feldman's affidavit. The court does not consider this objection as proper for purposes of this motion because Feldman fails to establish that he has personal knowledge and is qualified to testify about the Union's practices and policies. *See Wyche v. Ill. Dep't of Human Servs.*, No. 06 CV 2547, 2008 WL 4866354, at *7 (N.D. Ill. June 3, 2008) (affidavit of attorney who lacks personal knowledge is not admissible at the summary judgment stage); *Roloff v. Sullivan,* 772 F. Supp. 1083, 1088-89 (N.D. Ind. 1991) ("[A]ffidavits of attorneys who lack personal knowledge of information related in supporting documentation are not entitled to consideration on a summary judgment motion.").

## Analysis

Cobbling together the surviving facts after applying L.R. 56.1, the legal analysis on the claim of unlawful retaliation[2] in this case is fairly straight forward. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a claim to survive a summary judgment challenge, "a nonmovant must be able to show that a reasonable jury could return a verdict in [his] favor." *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652, 662 (7th Cir. 2011). Courts must view the evidence in the light most favorable to the nonmovant, but "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). And, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

Green may prove retaliation directly or indirectly. *See Greengrass v. Int'l Monetary Sys.*, 776 F.3d 481, 485 (7th Cir. 2015) (citing *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013)). Here, Green opts for the direct method, which requires him to demonstrate that: (1) he engaged in statutorily protected conduct; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the two. *Greengrass*, 776 F.3d at 485. If a rational trier of fact could

---

[2] The court declines to consider any summary judgment issues, if any, pertaining to Plaintiff's claims of race and sex discrimination because the Union failed to submit adequate undisputed facts or developed arguments warranting this court's analysis.

conclude and find that the Union retaliated against Green, summary judgment is not appropriate. *See Armato*, 766 F.3d at 719.

There are no controversies over the first two elements for purposes of assessing summary judgment. As to the first element, Green's discrimination filing against the Union with the EEOC constitutes statutorily protected conduct. *See Tomanovich v. City of Indianapolis*, 457 F.3d 646, 663 (7th Cir. 2006) (there is "no dispute" that filing an EEOC discrimination charge is a statutorily protected act). As to the second element, Green must show that a reasonable employee would have found the Union's action to be "materially adverse." *Id.* In the context of a Title VII retaliation claim, "[a] 'materially adverse action' . . . means any conduct that might dissuade a reasonable employee from lodging a discrimination charge." *Metzger v. Ill. State Police*, 519 F.3d 677, 684 (7th Cir. 2008). And as the Seventh Circuit already explained in this case on appeal, "[a] claim against a labor organization under § 2000e-2(c)(1) or § 2000e-3(a) does not depend on showing that either the employer or the union violated any state statute or contract." *Green v. Am. Fed. of Teachers/Ill. Fed. of Teachers Local 604*, 740 F.3d 1104, 1107 (7th Cir. 2014). The key inquiry in this case therefore centers on the third element and whether the Union had "actual knowledge" of Green's protected activity. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).

The Union argues that Green has produced "no evidence" of retaliation. (R. 52-4, Def.'s Mem. at 8-9.) The court disagrees. Green presents adequate evidence to show that he filed an EEOC charge against the Union, (R. 58, Pl.'s Facts

¶ 22), that he was refused representation in his Tenure Act case, (id. ¶ 5), and that the Union refused his request for legal representation because he had "repeatedly instituted litigation against the Union," (R. 58-4 at 2). On its face—drawing reasonable inferences in favor of Green—Feldman's letter states that the Union's motivation for not providing Green with representation was directly related to Green's litigation against the Union. (Id.) But because Green's EEOC charge against the Union predates Feldman's letter by almost five years and because the letter does not specifically refer to the EEOC charge, a factual question exists as to whether the Union was motivated by that charge when it declined to provide him with legal representation. Another reading of the letter is that the Union chose not to provide representation to Green because of their conflict of interest and not merely because he had filed claims against the Union in the past. But when considering a summary judgment motion "[a] court may not . . . choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hanson v. Fincantieri Marine Group,* 763 F.3d 832, 836 (7th Cir. 2014).

Here the factual question cannot be resolved in favor of the Union as a matter of law. Although Feldman did not specifically refer to the EEOC charge in his letter, a reasonable inference can be drawn that the EEOC charge was also part of the litigation he referred to in the letter. The fact that Feldman now testifies that he was not aware of the EEOC charge does not entitle the Union to summary

9

judgment. There exists a factual dispute that can only be resolved by a fact-finder after weighing Feldman's credibility.

To the extent that the Union believes it is entitled to summary judgment on any other bases, it fails to adequately explain why, and the factual record is too broken to assess the relative merit of these arguments. The relevant portions of the Union's motion contain zero citations to the record in this case, and only a few minimally-tailored citations to cases that set forth the applicable legal standard for summary judgment. For example, the Union says that it had a "policy which it uniformly enforced not to provide lawyers to bargaining unit members in civil cases," (R. 52-4, Def.'s Mem. at 6), but fails to provide any adequate evidence to support this claim. Legal arguments made without any citations to the record and without adequate support in case law are "perfunctory, conclusory, and undeveloped, and need not be considered." *Donnelly v. Chi. Park Dist.*, 417 F. Supp. 2d 992, 1006 (N.D. Ill. 2006) (citing *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005)). Furthermore, "underinclusive and skeletal presentations impermissibly shift the responsibility to the court to do the lawyer's work and to explicate the arguments that the briefs have left undeveloped." *Paulcheck v. Union Pacific R. Co.*, No. 09 CV 4226, 2010 WL 1727856, at *2 (N.D. Ill. Apr. 29, 2010) (citing *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987)). Lacking sufficient direction from the Union, the court will not seek out other bases for the Union's summary judgment motion.

As an afterword, the court identifies an issue the Union must address in the near future. The Union's motion demonstrates that Feldman will be a material witness at trial. The guiding principles for attorneys acting as witnesses are found in the American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules"). *See* L.R. 83.50; *Walton v. Diamond*, No. 12 CV 4493, 2012 WL 6587723, at *1 (N.D. Ill. Dec. 14, 2012). ABA Model Rule 3.7(a), entitled "Lawyer as Witness" provides that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

This rule is identical to Illinois Rule of Professional Conduct 3.7. *See Ill. R. Prof'l Conduct* 3.7. Pursuant to these professional responsibility rules, the Union is entitled to have Feldman assist with the preparation of this case for trial, but he will most likely be disqualified to serve as trial counsel. *See Mercury Vapor Processing Techs. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 789 (N.D. Ill. 2008) ("[E]ven if [the attorney] later becomes a witness at trial or in an evidentiary proceeding, he is not prohibited from conducting discovery, drafting motions, or serving in some other capacity at this stage in the litigation.")

## Conclusion

For the foregoing reasons, the Union's motion for summary judgment is denied.

ENTER:

_____
Young B. Kim
United States Magistrate Judge